## Thompson v. Forsythe, et al.

(Decided December 17, 1915.)

### Appeal from Mercer Circuit Court.

Appeal and Error—Findings of Court.—Where a settlement involves a multitude of accounts, and each of the parties has been

guilty of laches, and by reason of time, many of the books and documents have been lost or destroyed, and the persons who were conversant with the transactions have died, and the judgment of the chancellor does substantial justice between the parties, his judgment will not be disturbed.

HAZELRIGG & HAZELRIGG, E. H. GAITHER, C. H. SHEILDS, and J. B. THOMPSON for appellant.

C. E. RANKIN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Previous to the 24th day of August, 1898, J. M. Forsythe had become considerably involved, as the surety of the appellant, John B. Thompson, upon various notes which had been executed by appellant to banks and private persons, and Forsythe had been required to pay a considerable sum of money in this way for appellant. On that day appellant executed to Forsythe a promissory note for the sum of $26,055.90, for sums which Forsythe had either paid or assumed to pay for appellant, and upon the same date, executed to Forsythe, to secure the note, a mortgage upon various pieces of real property, among which was the plant of the "Old Fort Springs Distillery," including the good will of the trade and custom of the distillery, the merchandise, and products of the distillery, the trade marks and brands then used upon the products of the distillery, the fixtures, machinery, rents, issues and profits of the distillery property. Forsythe was the surety of appellant upon notes to various parties, and on the same day of the execution of the mortgage to further secure Forsythe in all the debts which he owed to Forsythe or for which Forsythe was his surety, the appellant executed to him a paper, by which he transferred to Forsythe the "storage" which had accrued, and which would thereafter accrue on all the whiskey, which was then stored upon the distillery property. Out of the "storage," however, Forsythe was to pay the absolute running expenses of the distillery, for necessary repairs, and the state, county and municipal taxes upon the whiskey and property. Forsythe was to collect the "storage" and apply same, first as above stated, and then to the payment of any debts which appellant owed him or for which he was surety for appellant. The warehouse receipts for the whiskies were held by different persons to secure debts owing to

them by appellant, and the holders of the receipts were directed to deliver the receipts to Forsythe, when the sums due them should have been paid to them, respectively, and the whiskies and receipts were, also, transferred to Forsythe to secure the sums which appellant owed him, or for which he was a surety. The employes at the distillery were directed to observe the contract made by appellant and Forsythe, with reference to the "storage."

The appellant claims that by virtue of the mortgage and contract and further agreement between him and Forsythe, Forsythe became a trustee for appellant, for the collection of the "storage," the payment of the debts and taxes due, the disposal of the whiskies, and the operation of the distillery, and that he delivered the possession of the distillery property and distillery to Forsythe to execute the trust. The representatives of Forsythe deny that any trust was created, or that the property was ever delivered to Forsythe, or that he was ever put into the possession or control of the property. About September 10th, 1898, F. A. Forsythe, a son of J. M. Forsythe, was employed, as he contends, by appellant, to perform the duties of superintendent at the distillery, but appellant contends that he was put there by J. M. Forsythe as his representative, in control, to hold the possession of the property for him, under the alleged trust agreement. F. A. Forsythe kept the books and collected the "storage," paid the running expenses, received the moneys for the taxes from the owners of the whiskies, and paid the taxes to the United States and the State of Kentucky, and some of the county and municipal taxes, and was paid for his services by appellant the sum of $60.00 per month, while the distillery was idle, and $100.00 when it was in operation; but, as he contends, he acted under the direction of appellant, at all times, and was never in the possession of the property, or its proceeds or profits, except as the servant of appellant. In the month of June, 1899, J. M. Forsythe died, and F. A. Forsythe and H. A. Forsythe were appointed and qualified and acted as the executors of his will.

Previous to the month of February, 1900, the executors of J. M. Forsythe, deceased, sued appellant upon the $26,055.90 note, and the mortgage and contract above mentioned, and some other indebtedness, and at

about the same time, the Farmers National Bank, of Danville, sued appellant and the executors of J. M. Forsythe upon notes which it held against appellant, and upon which decedent was the surety of appellant, and these suits being consolidated on February 10th, 1900, a judgment was rendered in favor of the bank against appellant and the executors, as sureties for appellant, for the sum of $3,348.00, with interest at 6% per annum from January 8th, 1899. This judgment was secured by a lien upon three hundred and ninety-three barrels of whiskey, which was stored in the distillery. The bank, also, recovered a further judgment against appellant and the executors of the decedent, as sureties for appellant, for the sum of $2,700.00, with interest from January 12th, 1899. This judgment was secured by a lien upon three hundred and ten barrels of whiskey, which was stored in a warehouse at the distillery. It, also, recovered a judgment against appellant and the executors of decedent, as his sureties, for the further sum of $4,320.00, with interest from January 12th, 1899. This judgment was secured by a lien upon five hundred barrels of appellant's whiskey, which was stored in the distillery warehouse. The liens were adjudged and the whiskies adjudged to be sold in satisfaction of the sums for which judgments were recovered.

F. A. Forsythe and H. A. Forsythe, executors of J. M. Forsythe, recovered a judgment for the following sums against appellant, viz.: $26,055.90, with interest from August 24th, 1898; $819.91, with interest from March 21st, 1899; $16,799.21, with interest from March 20th, 1899; $2,102.76, with interest from February 9th, 1899; $154.35, with interest from February 9th, 1899; $7,897.10, with interest from January 17th, 1899. The judgment, furthermore, directed the enforcement of the mortgage liens held by appellees. The liens held by appellees, also, covered much of the property upon which the Farmers National Bank, of Danville, held liens to secure the payment of the judgments in its favor.

At the same time, the Farmers National Bank recovered a judgment, in ordinary, against appellant, Thompson, and the executors of J. M. Forsythe for the sum of $2,700.00, with interest from January 12th, 1899, which the executors paid, it amounting to the total sum of principal, interest and costs, to the sum of $2,913.90.

On February 14th, 1899, the First National Bank, of Lexington, recovered a judgment against J. M. Forsythe, upon a note upon which he was surety for appellant, Thompson, the sum of $2,281.00, and the costs of the action.

The executors of J. M. Forsythe, deceased, who were the appellees, F. A. Forsythe and H. A. Forsythe, paid off the judgments which were rendered against them as the executors of their father, who was a surety upon the notes upon which the judgments were recovered by the First National Bank, of Lexington, and the Farmers Bank, of Danville, and became the owners of them.

The principal of all of the above-mentioned debts made a total sum of over $68,000.00.

F. A. Forsythe continued at the distillery and acting as its superintendent from September 10th, 1898, until July 1st, 1903. After the rendition of the judgments on February 10th, 1900, in favor of the executors of J. M. Forsythe and Farmers National Bank, of Danville, against appellant, F. A. Forsythe, and his sister, Naomi Chinn, became the owners of this judgment in 1900 or 1901, the exact time, the record does not disclose, by purchase of it from the other heirs of their father's estate, but it does not appear to have ever been formally assigned to them.

On the 5th day of January, 1901, an agreement was made by appellant and the executors of J. M. Forsythe with the Columbia Finance & Trust Company, by which the warehouse receipts for 2,055 barrels of the whiskey, upon which the executors had a lien, were delivered to the company, and for a commission the company agreed to sell same and in consideration of this agreement to pay to the executors the sum of $30,000.00, to be applied upon the judgment against appellant, and, after the sale of the whiskey, to pay all the surplus of the proceeds to the executors, after retaining interest on the sum paid at once, the commission for selling the whiskey, anything paid out by way of insurance. This agreement was carried out, and the trust company paid to the executors $30,000.00 on January 5th, 1901, and $8,076.00 on April 8th, 1902, and for some reason or other not explained, paid to appellant a small balance remaining in its hands upon a final settlement of the transaction.

The distillery had not been in operation since 1894, until February, 1901, when, under the superintendency

of F. A. Forsythe, it was put in operation and made several thousand barrels of whiskey during the spring of 1901. It was again operated in 1902 and 1903, making several thousand additional barrels of whiskey.

In April, 1902, for the purpose of paying something on the debts, and to make another crop of whiskey, the appellant borrowed $25,000.00 from the Columbia Trust Company, and the note, which he gave the Trust Company for it, was secured by the executors of J. M. Forsythe, and F. A. Forsythe and Naomi Chinn, as the joint owners of the judgment held by them against appellant, by assigning the judgment to the trust company as security for the payment of the note, and under this agreement, $10,000.00 of the money was to be paid upon the judgment, which was done and the remainder put into the hands of F. A. Forsythe to finance the making of the crop of whiskey.

F. A. Forsythe kept the books of the distillery from September 17th, 1898, until March 22nd, 1901, when the making of whiskey was resumed, and appellant employed one T. J. Fisher to keep the books from that time until July 27th, 1901. Givens Forsythe was the bookkeeper during the periods of the operation of the distillery in 1902 and 1903, and during the times the distillery was not in operation F. A. Forsythe was bookkeeper. During the period that F. A. Forsythe was engaged at the distillery, he was superintendent, had control of the employes there, directed the work, collected the "storage," received the taxes paid on the whiskey by the owners, paid the taxes to the United States upon whiskey forced out of bond by the expiration of the bonded periods; paid the taxes due the State government, but did not pay all the taxes due the county and municipalities. He issued warehouse receipts and borrowed money upon them for the operating expenses of the distillery; employed and paid the labor; operated the bottling house connected with the distillery, had repairs made, and purchased some material to be made into whiskey. The warehouseman, distiller and night watchman were not employed by him, though he paid to them their salaries. During the time, he received in taxes, "storage," sales of whiskey, and money borrowed upon the warehouse receipts, and moneys furnished to operate the distillery, bottling, etc., a total sum of near $700,000.00. He kept accounts in bank, which were styled "J. M. Forsythe,

Storage," "J. M. Forsythe, Trust Fund," "John B. Thompson, Case Goods," and "John B. Thompson, Agent." To the credit of the first of these accounts, the moneys received for "storage" were deposited; to the credit of the second account, the moneys received and to be paid out for taxes were deposited; to the third account, the funds received and paid out in the bottling department, and to the last named account, the funds received and paid out in the operation of the distillery were deposited. The checks given were signed in the style of the accounts, respectively, except a large number of the checks were signed by Forsythe as "agent." He kept a book, in which from time to time he charged to the estate of J. M. Forsythe the sums paid by him out of the storage upon the debts, which appellant owed it. He left the employment of appellant and the distillery upon July 1st, 1903, and appellant says turned over everything to him. He left all the books kept by him, the bank pass books, checks, vouchers, and everything connected with the business, at the distillery, and in the custody of appellant. Appellant claims that at the time F. A. Forsythe quit his employment, he requested him to make up a statement of his transactions and presented it to him, but Forsythe said that he could not do so, because the books had not been kept with a view of doing anything of that kind, and that the debts due his father's estate had been practically paid, and that he would not make such a statement and settlement for anything that might be coming to him, and was satisfied. Appellant was corroborated to some extent, in this statement, by the witness, E. M. Hardin. Forsythe denies this. Matters thus rested for seven years, until in 1910, when Forsythe, claiming that $24,000.00 was yet due upon the judgment, demanded a settlement and payment of it from appellant. The appellant wrote him from Chicago, that he would return to Harrodsburg soon, and would make a settlement and pay all that was owing.

In the meantime, a litigation began between the Columbia Trust Company and appellant, which grew out of the loan of the $25,000.00 and other transactions between them, and resulted in a judgment in favor of the Trust Company for $735.45. F. A. Forsythe and Naomi Chinn paid to the Trust Company this sum and the Trust Company assigned back to them the judgment which they had in 1902 assigned to the Trust Company to se-

cure the debt, of which the $735.45 was the balance, un-paid. They then proceeded to have the property upon which the original judgment, in the case of F. A. Forsythe, &c., executors against appellant was a lien, ad-vertised to be sold in satisfaction of it.

During the year 1902, while F. A. Forsythe was em-ployed in operating the distillery, the funds for its op-eration were exhausted and he and Naomi Chinn ad-vanced $2,500.00 to appellant toward paying the operat-ing expenses, for which appellant executed to them his note, and has, from time to time, made payments upon it and renewed the note until on September 3rd, 1910, it had been reduced to the sum of $1,026.54, for which ap-pellant executed to them his note, and they brought an action upon it against appellant.

On March 28th, 1912, the appellant brought this suit against F. A. Forsythe, Naomi Chinn, and Fred A. Forsythe and H. A. Forsythe, executors of J. M. For-sythe, and by the petition and amendments thereto, al-leged that the judgment rendered February 10th, 1910, and which they were proceeding to execute against him, had been fully paid off and satisfied, and praying that they be enjoined from having the judgment executed; that the mortgage and assignment executed by him to J. M. Forsythe on August 24th, 1898, was in effect a deed of trust and made J. M. Forsythe his trustee; that Forsythe took possession of his distillery property and as such trustee, by F. A. Forsythe, his representative; that after the death of J. M. Forsythe, F. A. became one of his executors and thereafter a joint owner of the judg-ment and upon becoming executor of the estate became the trustee himself, and so continued such until 1903; that he received large sums of money as such trustee, which he appropriated to his own use and the use of the estate of the decedent, and of himself and Chinn, as the joint owners of the judgment, to the amount of $55,000.00, in excess of the judgment; that he was un-able to and could not and had not learned of these ap-propriations until shortly before the filing of the suit, and prayed that an accounting be had, and for a judg-ment declaring the judgment paid and satisfied, and a judgment over for the remainder, that a settlement might show them to be indebted to him.

The appellees, by answer, traversed the allegations of the petition, and in addition relied upon the statute

of limitations, and the laches of appellant as a defense to the action. This suit was consolidated with the suit of F. A. Forsythe, &c., Executors, and Farmers National Bank of Danville against appellant, and with suits then pending by the municipalities in which the distillery property was situated, against appellant for taxes owing to them, and the suits of Chinn and Forsythe and the suit of one Lee against appellant.

The matters in controversy were referred to a commissioner of the court to hear proof, and to audit the accounts of F. A. Forsythe and appellant, and to make and report a settlement of the matters in controversy between appellant and appellees. F. A. Forsythe undertook to render an account of all his transactions as the superintendent of the distillery. Some of the books and many of the vouchers relating to the accounts, as he stated, had been lost and destroyed. The rats had had access to some of the books and vouchers and had dealt with them, after their mode of book-keeping, but all the remaining books, accounts, checks, bank pass books, stubs of check books, receipts, and all papers relating to the transactions, which could be found, were brought before the commissioner. Several thousand pages of depositions were taken and between five and six thousand exhibits were filed as evidence. The pleadings, alone, cover three hundred pages. The commissioner made a very comprehensive report of the transactions and accounts between the parties, and reported that all of the judgment had been paid, except $3,143.00, as of the 1st day of July, 1903. The appellant filed fifty-two exceptions to the report and the appellees twenty-seven exceptions, all of which were overruled by the chancellor, who tried the case below, except the exception to the manner of calculating the interest upon the judgment and credits, as originally done by the commissioner. A supplemental report was filed in order to comply with the view of the court, and no exception was taken thereto. The report, as supplemented, was approved, and judgment rendered accordingly, to which both appellant and appellees excepted, and each prayed an appeal to this court.

While all the exceptions have been duly considered, to undertake to discuss all of them would extend this opinion into a volume and would not be attended with any profit to any one. Suffice it to say that the evidence

fails, in our opinion, to show that F. A. Forsythe was a trustee for appellant. He seems to have been a mere employe of the appellant, and was conducting the business under his orders and directions. The possession was the possession of appellant. While he was a mortgagee and entrusted with the control of a portion of the mortgaged property, he was in control as a servant of appellant, and not as a mortgagee. To receive the "storage" and apply the portion of it remaining, after the running expenses of the distillery were paid, was nothing more than appellant by his contract of assignment of the "storage" agreed that any other person, whom he might have employed in the capacity, in which Forsythe was employed, would do. As superintendent of the distillery, Forsythe was obliged to act honestly and to render an account of the funds of appellant received by him and he seems to have fairly rendered an account of his transactions. Appellant could not wait until many of the persons, who could have shed light upon the transactions, had died, as was the fact in this case, and after he had permitted some of the books and many of the vouchers left in his possession, and which were his books and papers and not those of appellees, to become lost, wasted and destroyed, and then demand that appellees reimburse him for every disbursement not attended with a formal voucher. The appellee, being in his employ, would doubtless have kept books and secured vouchers, in accordance with appellant's directions, if he had directed him to do so. The commissioner seems to have charged Forsythe with every disbursement which he was not able, by the evidence of the entries upon the books, or checks, receipts, check stub book or memorandums, to show had been expended for the benefit of appellant. Whenever property or money was shown to have gone into the hands of F. A. Forsythe, the court below required him to show that it was used or expended for the benefit of appellant, and if he was not able to do so, he was charged with it. The books were not kept as an expert could have done, but they seem to have been kept in a manner satisfactory to appellant while it was going on. The appellees having waited nine years before undertaking to enforce their judgment, and never having entered a credit upon it, although it was due to be credited by more than $67,000.00, as admitted by them, and not having provided appellant with any statement of the credits due, and the dates of their payment; and ap-

pellant with the books, accounts, and written evidences of the transactions between him and appellees in his possession, and then to wait for nine years for a settlement, and until many of the vouchers and books had become disfigured and destroyed, and most of the persons conversant with many of the transactions dead, and the memories of those living dimmed by time, and then to suddenly awake to the claim that he had been defrauded out of thousands of dollars; neither of the parties seem to be in position to seriously complain or to be seriously exacting of the other, in a court of equity. Taking into consideration the state of the record, the intervention of time since the occurrence of the transactions, the large number of transactions, the death of many persons, whose testimony would have been invaluable to a proper and definite determination of what was just between the parties, and the loss of memory by other witnesses, and the loss of records and documents, and the laches of both parties, in many respects; upon all the equities of the case, as applying to each party, about many of the transactions, it seems that the judgment of the chancellor below did substantial justice between the parties upon the whole case, and it is therefore affirmed, both upon the original and cross appeal.